1

2

3                    UNITED STATES DISTRICT COURT

4                 NORTHERN DISTRICT OF CALIFORNIA

5

6

7   EILEEN DOWELL,                          Case No.: 3:12-cv-05743-JCS

8               Plaintiff,                   ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS AND
9         v.                                 DISMISSING COMPLAINT WITH
                                             LEAVE TO AMEND [Docket No. 11].
10  CONTRA COSTA COUNTY, et al.,

11              Defendant.

12

13  **I.     INTRODUCTION**

14         Plaintiff Eileen Dowell ("Plaintiff") brings this action against Contra Costa County

15  ("Defendant County") and two Contra Costa County employees, District Attorney Mark Peterson

16  ("Defendant Peterson") and District Attorney Chief Inspector Paul Mulligan ("Defendant

17  Mulligan"), collectively "Defendants."  Plaintiff asserts a claim under 42 U.S.C. § 1983,

18  contending Defendants violated her First Amendment rights.  Plaintiff also asserts state law

19  claims for negligence, negligent infliction of emotional distress, intentional infliction of emotional

20  distress, as well as whistleblower claim under California Labor Code § 1102.5.  Defendants filed

21  a Motion to Dismiss ("Motion") Plaintiff's Complaint in its entirety, contending Plaintiff failed to

22  comply with the California Tort Claims Act prior to initiating suit, failed to state a claim upon

23  which relief may be granted for each asserted cause of action, and failed to exhaust administrative

24  remedies before asserting her whistleblower claim under § 1102.5.  The Motion came on for

25  hearing February 22, 2013.  For the reasons stated below, the Court GRANTS  Defendants'

26  Motion to Dismiss and DISMISSES the Complaint WITH LEAVE TO AMEND.[1]

27

28         [1]  The parties have consented to the jurisdiction of the undersigned magistrate judge
    pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.        BACKGROUND

### A.        Factual Allegations

Plaintiff has worked as the Manager of the Victim Witness Program for Defendant Contra Costa County District Attorney's office since November 2004.  Complaint ("Compl.") ¶ 9.  Her job responsibilities include securing funding from state and federal authorities to provide financial assistance to crime victims and witnesses who testify in criminal proceedings.  *Id.*  Defendant Mark Peterson became the newly-elected District Attorney in Contra Costa County in 2011 and named Defendant Paul Mulligan Chief Inspector of the District Attorney's Office in June 2011.  *Id.* ¶ 10.

On June 2, 2011, Plaintiff was in a meeting with Defendants Peterson and Mulligan when Defendant Mulligan instructed Plaintiff to charge an employee's hours to a grant Plaintiff managed in order to remedy a timekeeping mistake by another manager.  *Id.* ¶ 11.  Plaintiff responded that this action was likely illegal because the employee's hours should have been charged to the Underserved Victims Grant, not the Victim/Witness grant.  *Id.*  Defendant Peterson instructed Plaintiff to contact the state granting agency, Cal EMA, to inquire whether the action was permissible.  *Id.*  Plaintiff spoke with Cal EMA chief Sally Henchen and program analyst Diana Mazuka, both of whom stated that changing the timesheets in the manner proposed was illegal.  *Id.* ¶ 12.  Plaintiff informed Defendant Peterson via email that the action was illegal and she would not participate in it.  *Id.*

Five days later, Defendant Peterson, who was upset about the content of Plaintiff's email and Cal EMA's response, called Plaintiff into his office with Defendant Mulligan.  *Id.* ¶ 13.  Defendant Peterson directed Defendant Mulligan to contact Cal EMA with the same inquiry.  *Id.*  Defendant Mulligan emailed Cal EMA, stating that an internal audit had brought to light an accounting error he needed to correct and that his office agreed that changing the timesheets was the best course of action.  *Id.* ¶ 14.  Cal EMA again responded that such an action would be illegal.  *Id.*

Plaintiff has since experienced a pattern of events that she alleges constitute retaliation.  *Id.* ¶ 15.  In support of her claim, Plaintiff asserts that Defendant Mulligan, despite being her

United States District Court
Northern District of California

United States District Court
Northern District of California

1   direct supervisor, refused to meet with her for over seven months to support her work managing

2   two grants, two contracts, and eight full-time staff.  *Id*. ¶ 15.  She also asserts that when she

3   emailed a colleague in June 2011 requesting updated spending figures from the Victim/Witness

4   Grant, Defendant Mulligan instructed Plaintiff to do the research herself, even though he knew

5   she did not have access to the information necessary to complete the task and it was outside her

6   job responsibilities.  *Id*. ¶ 16.  On July 25, 2011, Plaintiff approached Defendant Mulligan about

7   extending a temporary position for an employee.  He said he would look into it, but never

8   responded.  *Id*. ¶ 17.  Plaintiff lost this support staff due to Defendant Mulligan's inaction.  *Id*.

9       Plaintiff relates a series of events that began when she missed work due to illness on

10  September 7, 2011.  *Id*. ¶ 18.  Defendant Mulligan called Plaintiff to ask the location of the

11  Underserved Victims Grant checkbook because he wanted to write a $900 check for a purpose not

12  approved by the grant.  *Id*.  Though Defendant Mulligan said he would pay the money back later,

13  Plaintiff declined to tell him where to find the checkbook.  *Id*.  The same day, Plaintiff heard from

14  a co-worker that Defendant Mulligan and another employee had searched Plaintiff's office for the

15  checkbook.  *Id*.  Plaintiff reported this incident to Cal EMA, which is investigating the matter.  *Id*.

16  ¶ 19.  Plaintiff does not allege whether Defendants are aware that she reported this incident to Cal

17  EMA.  *See id.*

18      A week after the checkbook incident, Plaintiff approached the other employee who

19  searched Plaintiff's office with Defendant Mulligan.  *Id*. ¶ 20.  Plaintiff maintains that the

20  employee became very agitated and yelled at her.  *Id*.  Plaintiff reported this incident to Defendant

21  Mulligan and requested that he investigate it and pursue appropriate discipline because the

22  employee was creating a hostile work environment.  *Id*.  Defendant Mulligan proposed that the

23  three of them meet, to which Plaintiff agreed if she could first meet with Defendant Mulligan to

24  discuss the incident.  *Id*.  Defendant Mulligan refused and instead threatened Plaintiff with

25  insubordination for refusing to meet.  *Id*.  Defendant Mulligan never investigated the incident nor

26  disciplined the employee.  *Id*.

27      On a separate matter that began on September 19, 2011, Plaintiff learned that Defendant

28  Peterson had hired a consultant to conduct a study on the strengths and weaknesses of the office

3

1   and recommend how to improve office communications. *Id.* ¶ 21. The study was to include all

2   members of the management team, which includes Plaintiff. *Id.* At a staff meeting two months

3   later, Plaintiff learned from Defendant Peterson that the report was complete. *Id.* Plaintiff

4   professes that she informed Defendant Peterson she had not been interviewed even though she

5   should have been included as a member of the management team. *Id.* Defendant Peterson

6   seemed uncomfortable and stated that her interview would come later, though Plaintiff was never

7   interviewed. *Id*.

8        Between May and November 2011, Plaintiff and two of her subordinates made a total of

9   three complaints of hostile work environments to Defendant Mulligan. *Id.* ¶ 22. The complaints

10   all named another employee as creating a hostile work environment. *Id.* Defendants Peterson and

11   Mulligan never investigated the complaints and thus created a difficult work environment for

12   Plaintiff and her employees. *Id.*

13        Plaintiff met with Defendant Mulligan on December 9, 2011, for the first time in many

14   months and in the presence of another colleague, to discuss hiring a new employee. *Id.* ¶ 23. At

15   the meeting, Defendant Mulligan had a verbal outburst at Plaintiff, proclaiming "[w]hy are you so

16   negative all the time!" *Id.* Plaintiff called Defendant Mulligan later that day to inquire about his

17   comment and his refusal to meet with her. *Id.* Defendant Mulligan purportedly responded "[i]t's

18   because I can't meet with you without a third person being present." *Id.*

19        On January 13, 2012, Plaintiff was called to Defendant Mulligan's office under the

20   pretense of discussing how to retain an employee who was considering leaving. *Id.* ¶ 24.

21   Plaintiff was, instead, confronted by an accusatory investigation concerning an incident of alleged

22   sexual harassment by another employee that had occurred five years ago. *Id.* In the meeting,

23   Plaintiff stated that she had handled the situation in an appropriate manner. *Id.* ¶ 24. Defendant

24   Paul Mulligan then insinuated that Plaintiff was retaliating against others in the office. *Id.* On

25   January 20, 2012, Plaintiff emailed Defendant Mulligan about several issues, including a report of

26   mold in the office and a staff member disregarding the chain of command, at which time she

27   responded to the allegation made against her at the January 13 meeting. *Id.* ¶ 25. Plaintiff wrote,

28   "I do not appreciate the character slander that is occurring that now has led you to make decisions

to limit my ability to make management decisions in the program." *Id.*  Defendant Mulligan then demanded she write a memo about the sexual harassment allegation and address specific elements, which was due in one week.  Compl. ¶ 26.  Defendant Mulligan advised Plaintiff to seek advice from her union or legal counsel.  *Id.*  Defendant Mulligan's advice caused Plaintiff to fear for her job security.  *Id.*

Plaintiff also relates events regarding a new employee who began working for her on January 17, 2012.  *Id.* ¶ 27.  Plaintiff put in a request to have a telephone line installed in the employee's office.  *Id.*  When almost a month had elapsed without the line being installed, Plaintiff contacted the office manager to inquire about the delay.  *Id.*  Plaintiff was told that Defendant Mulligan had cancelled her request.  *Id.*

On February 14, 2012, Plaintiff checked the account statements of the Emergency Revolving Fund, which is used exclusively to pay emergency funeral burial expenses to family members of homicide victims.  *Id.* ¶ 24.  The statements showed two transfers in early November 2011, each for $1,500, into an investigator's checking account that Plaintiff alleges was managed exclusively by Defendant Mulligan.  *Id.*  The funds were spent on unauthorized expenditures.  *Id.*  Plaintiff investigated the transfers and discovered that Defendant Mulligan's secretary repaid the $3,000 on February 10, 2012.  *Id.*  Plaintiff maintains that this action was unauthorized and was an intentional act "designed to place stress and punishment on Plaintiff and/or to set her up to cover draw the account."  *Id.*  Plaintiff reported the incident to the California Victim Compensation Board, which investigated the matter and found that Plaintiff did nothing wrong, that Defendant Mulligan violated protocol, and that the District Attorney's Office had to repay approximately $50,000.  *Id.* ¶ 29.  The District Attorney's Office ultimately had to return approximately $172,000.  *Id.*  Plaintiff does not allege whether Defendants knew that Plaintiff was the one who triggered this investigation.

Finally, Plaintiff was placed on medical leave on February 16, 2012, "due to the stress and emotional toll of working under Defendants."  *Id.* ¶ 30.  Two months later, on April 17, 2012, Defendant Mulligan emailed her at her personal email address to ask for help getting statistics off her computer database for a Cal EMA grant.  *Id.* ¶ 31.  Four days later, Plaintiff responded that

United States District Court
Northern District of California

1   she was not to work per doctor's order, and could not assist him.  *Id.*  Plaintiff received a second

2   email from Defendant Mulligan two days later requesting that she call him to explain how to

3   retrieve the information. *Id.* ¶ 31.  Plaintiff refers to Defendant Mulligan's third email, from May

4   2, 2012, on which he copied Defendant Peterson, telling Plaintiff she must respond before May

5   7, 2012.  *Id*.  On May 6, 2012, Plaintiff responded to Defendant Mulligan that specialists in the

6   office could assist him with this general task since she was on disability leave.  *Id*.  On May 7,

7   2012, Plaintiff spoke with Cal EMA Chief Sally Henchen about Defendant's request.  *Id*. ¶ 32.

8   Chief Henchen told Plaintiff that no Cal EMA reports were due and that no one from Cal EMA

9   had requested information from the Contra Costa County District Attorney's office.  *Id*.

10   Plaintiff concludes that Defendant Mulligan's request was "likely another attempt to retaliate

11   against and harass Plaintiff."  *Id*.

12          **B.**       **Defendants' Motion to Dismiss**

13        Defendants filed a Motion to Dismiss on January 7, 2013.  Motion at 1.  Defendants argue

14   that Plaintiff's entire complaint should be dismissed because Plaintiff did not plead that she

15   complied with the California Tort Claims Act by presenting a written claim for damages to Contra

16   Costa County before filing the suit.  Motion at 5-6.  Defendants also contend that all of Plaintiff's

17   claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because

18   she fails to plead essential facts to substantiate the elements of the claims and relies on conclusory

19   allegations based only on speculation.  Motion at 6-7.  Regarding Plaintiff's First Amendment

20   claim, Defendants argue that Plaintiff's allegations fail to meet any of the three required prongs of

21   the claim: that Plaintiff engaged in expressive conduct that addresses a matter of public concern,

22   that government officials took adverse action against her, and that her expressive conduct was a

23   substantial or motivating factor for the governmental officials' adverse action.  Motion at 7-10

24   (citing *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004)).

25        Defendants dispute Plaintiff's other four claims on various grounds.  According to

26   Defendants, the whistleblower claim fails because Plaintiff did not engage in activity protected by

27   § 1102.5 of the California Labor Code, none of the activities Plaintiff alleges violate state or

28   federal law, and Plaintiff failed to allege any adverse employment actions that materially affect

United States District Court
Northern District of California

1   her employment.  Motion at 11-13 (citing *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191

2   (Cal. App. 1st Dist. 2012)).  Defendants argue that Plaintiff's third and fourth negligence claims

3   are barred by the California Workers' Compensation Act, which provides exclusive remedies for

4   negligence claims brought by an employee against an employer and other employees.  Motion at

5   13-14 (citing Cal. Lab. Code §§ 3600-3602).  Defendants challenge Plaintiff's fifth claim for

6   intentional infliction of emotional distress on the grounds that it fails to allege facts sufficient to

7   establish extreme and outrageous conduct by Defendants Peterson and Mulligan, or to establish

8   severe emotional distress.  Motion at 15-16 (citing *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d

9   148, 155 (1987)).

10       Plaintiff filed a memorandum in opposition to Defendants' Motion on January 22, 2013.

11   Plaintiff's Opposition to Motion to Dismiss ("Opp.") at 1.  Plaintiff does not oppose dismissal of

12   her third cause of action for negligence or her fourth cause of action for negligent infliction of

13   emotional distress.  Opp. at 9.  However, Plaintiff maintains that she has pled facts sufficient for

14   her First Amendment claim, her § 1102.5 whistleblower claim, and her claim for intentional

15   infliction of emotional distress to survive Defendants' Motion to Dismiss.  Opp. at 2.

16   **III.    LEGAL STANDARD**

17       A complaint may be dismissed for failure to state a claim for which relief can be granted

18   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The

19   purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

20   complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on

21   a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true

22   and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v.*

23   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).

24       Generally, the plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) requires

25   a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

26   Civ. P. 8(a)(2).  The complaint need not contain "detailed factual allegations," but must allege

27   facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

28   662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  The factual

allegations must be definite enough to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

## IV.   DISCUSSION

Plaintiff does not oppose the dismissal of her claims for negligence and negligent infliction of emotional distress. These claims are therefore DISMISSED WITH PREJUDICE. The remaining claims in dispute are Plaintiff's first, second, and fifth causes of action for Defendants' alleged violation of Plaintiff's First Amendment rights, violation of California Labor Code § 1102.5, and intentional infliction of emotional distress. The Court will address each claim in turn.

### A.   First Amendment Retaliation

This Court assesses the Plaintiff's claim for retaliation in violation of the First Amendment using a sequential five-step series of questions:

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee;
> (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
> (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and
> (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

#### 1.   Expressive Conduct that is a Matter of Public Concern

Defendants argue that Plaintiff's First Amendment claim fails because her speech was not a matter of public concern. "Whether a public employee or contractor's expressive conduct addresses a matter of public concern is a question of law….This determination is made in light of 'the content, form, and context' of the expressive conduct 'as revealed by the whole record.'"

United States District Court
Northern District of California

*Alpha Energy Savers*, 381 F.3d at 924 (quoting *Connick v. Myers,* 461 U.S. 138, 147-48 n. 7 (1983)).  Speech regarding issues and information that members of society need to make informed decisions about the operation of government deserves protection under the First Amendment. *Alpha Energy Savers*, 381 F.3d at 924.  "In contrast, 'speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern.'"  *Id.* (quoting *Coszalter*, 320 F.3d at 973).

In her Complaint,  Plaintiff alleges that:

(1)  she informed Defendants Peterson and Mulligan that their proposed timesheet alteration was likely illegal, and after inquiring with Cal EMA at Defendants' directive, she informed Defendant Peterson that the alteration was in fact illegal and she would not participate (Compl. ¶¶ 11-12);

(2)  she reported to Cal EMA that Defendant Mulligan sought to write a $900 check for an unauthorized purpose from the Underserved Victims Grant checkbook, which Cal EMA is investigating (*Id.* ¶¶ 18-19);

(3)  she and two of her subordinates made three complaints to Defendant Mulligan naming another employee as creating a hostile working environment (*Id.* ¶ 22);

(4)  she complained to Defendant Mulligan regarding mold in the office, a staff member disregarding the chain of command and other concerns (*Id.* ¶ 25); and

(5)  she reported suspected misappropriation of the Emergency Revolving Fund monies to the California Victim Compensation Board, which resulted in a finding that Defendant Mulligan violated protocol and required repayment of $172,000  (*Id.* ¶¶ 28-29).

Plaintiff's allegations are sufficient to indicate that  she has engaged in three instances of speech that were a matter of public concern.  First, Plaintiff informed the District Attorney−an elected official−that he and Defendant Mulligan were about to engage in an illegal activity in which she would not participate.  In *McKinley v. Eloy*, the plaintiff also opposed matters internal to a government agency that was headed by elected officials.  705 F.2d 1110, 1112 (9th Cir. 1983).  McKinley spoke against the city council's failure to give city police officers an annual raise and criticized the relationship between employees and elected city officials.  *McKinley*, 705 F.2d at 1112, 1114.  The Ninth Circuit held that his speech was a matter of public concern. *McKinley*, 705 F.2d at 1114; s*ee also Robinson v. York*, 566 F.3d 817, 823 (9th Cir. 2009) (plaintiff police sergeant email to internal affairs office and conversations with supervisors about complaints "clearly addressed at least two matters of public concern: the misconduct itself and the

9

United States District Court
Northern District of California

distinct question of whether the investigating officers were … sweeping misconduct under the rug."). The court explained that "the way in which an elected official or his appointed surrogates deal with diverse and sometimes opposing viewpoints from within government is an important attribute of public service about which the members of society are entitled to know." *McKinley*, 705 F.2d at 1114-15.

Second, Plaintiff's report to Cal EMA regarding Defendant Mulligan's attempt to write a $900 check for an unauthorized purpose was a matter of public concern because she reported alleged misconduct by a government employee. *Alpha Energy Savers*, 381 F.3d at 926 (citing *Ceballos v. Garcetti*, 361 F.3d 1168, 1174 (9th Cir. 2004)) ("when government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees, … their speech is inherently a matter of public concern"); *see also Voigt v. Savell*, 70 F.3d 1552, 1560 (9th Cir. 1995). Third, Plaintiff's report to the California Victim Compensation Board about suspected misappropriation of Emergency Revolving Fund monies also related to alleged wrongdoing by an elected official and, as such, was a matter of public concern. *See Alpha Energy Savers*, 381 F.3d at 926.

Nevertheless, Plaintiff alleges two instances of speech which are not a matter of public concern. First, Plaintiff and two of her subordinates complained to Defendant Mulligan about another employee creating a hostile working environment. Like in *Coszlater*, this conduct "was of no relevance to the public's evaluation of the performance of the government" and is, therefore, not a matter of public concern. *Coszalter*, 320 F.3d at 974 (plaintiff's report to management that his backhoe had been vandalized was not a matter of public concern). Second, Plaintiff complained to Defendant Mulligan regarding mold in the office, a staff member disregarding the chain of command, and other concerns. This activity related to individual grievances and personnel disputes that have no bearing on the public's ability to assess the stewardship of its resources or the performance of public officials. *See id.*

### 2. Speech as Private Citizen or Within the Scope of Professional Duties

Public employees do not have First Amendment protection for statements made pursuant to their official duties. *Anthoine*, 605 F.3d at 745 (citing *Garcetti*, 547 U.S. at 413). Two bases

for finding that a plaintiff's speech is made as a private citizen rather than within the scope of employment are that: (1) the plaintiff had no official duty to have made the expressive speech, or (2) the speech was not part of the tasks the employee is paid to perform. *Eng*, 552 F.3d at 1071. "While 'the question of the scope and content of a plaintiff's job responsibilities is a question of fact,' the 'ultimate constitutional significance of the facts as found' is a question of law." *Id.* (citing *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129-30 (9th Cir. 2008)).

Plaintiff has not alleged whether or not the instances of her expressive speech were made within the scope of her professional duties, or rather, were spoken as a private citizen. If Plaintiff chooses to amend the Complaint, she must allege facts to adequately demonstrate that each instance of alleged expressive conduct was not part of her official duties, or was made as a private citizen. Moreover, in an amended § 1983 claim, Plaintiff shall identify only those acts that were entitled to First Amendment protection.

### 3.      Substantial or Motivating Factor of an Adverse Action

#### i.      Adverse Action

Defendants contend that Plaintiff's First Amendment claim should be dismissed for failure to allege any adverse employment action. Defendants rely on *Nunez v. City of Los Angeles* for the conclusion that an employee being "bad-mouthed and verbally threatened" does not constitute an adverse employment action. 147 F.3d 867, 875 (9th Cir. 1998). However, the Ninth Circuit clarified and elaborated its *Nunez* ruling in *Coszalter v. City of Salem* when it stated that "[t]he essential holding of *Nunez* is simply that when an employer's response includes only minor acts, such as 'bad-mouthing,' that cannot reasonably be expected to deter protected speech, such acts do not violate an employee's First Amendment rights." *Coszalter*, 320 F.3d at 976. Rather, the essential inquiry of a First Amendment claim is whether actions by a government employer "'chill the exercise of protected' First Amendment rights." *Coszalter*, 320 F.3d at 974-75 (quoting *Rutan v. Republican Party*, 497 U.S. 62, 73 (1990)). The *Coszalter* court held that a plaintiff has established a valid First Amendment retaliation claim under § 1983 if the plaintiff can "establish that the actions taken by defendants were 'reasonably likely to deter [them] from

1    engaging in constitutionally protected speech.'"[2]  *Coszalter*, 320 F.3d at 976.  An act need not be

2    severe to qualify as retaliatory.  *Id.* at 975.  In *Coszalter*, the court looked at several allegations

3    together in analyzing whether the alleged acts collectively constituted retaliation.  *Id.* at 976-77.

4           Plaintiff identifies several actions by Defendants and asserts that these constitute adverse

5    actions because when "taken in combination, are reasonably likely to deter employees to engage

6    in constitutionally protected speech, since they are acts that threatened to undermine Plaintiff's

7    ability to work productively in the office, and ultimately destroyed her past work efforts on behalf

8    of the victims she serves."  Opp. at 7.  Plaintiff alleges that: (1) she was denied meetings with

9    her direct supervisor, Defendant Mulligan, following the Plaintiff's and Defendants'

10   disagreement about the legality of Defendant Peterson's timesheet correction plan (Compl. ¶

11   15); (2) Defendant Mulligan deprived Plaintiff of the opportunity to maintain a temporary staff

12   position on a grant Plaintiff manages (*Id.* ¶ 17); (3) she was excluded from a study of the

13   office's strengths and weaknesses despite being part of the management team and being told

14   that all of the management team would be included (*Id.* ¶ 21); (4) Defendant Mulligan

15   responded to Plaintiff's email about mold and personnel issues with an "accusatory

16   investigation" that included a directive for Plaintiff to document her response to a sexual

17   harassment incident that had occurred five years earlier (*Id.* ¶ 25-26); and, (5) Defendants

18   withdrew monies from a fund for which Plaintiff had the duty of accounting and deposited the

19   funds in an account managed by Defendant Mulligan before spending the funds on items

20   Plaintiff believed to be outside of the contractually-authorized expenditures, which caused the

21   District Attorney's Office to either repay or forego $172,000.00 in grant funds that Plaintiff

22   would have secured for county residents (*Id.* ¶ 28-29).  Opp. at 5-7.

23

24           [2]  Defendants cite several cases in the Motion that reference standards for adverse actions
     in Title VII retaliation claims, seemingly to suggest that the standards should guide this Court's
25   analysis of a First Amendment retaliation claim.  Motion at 8-9; i.e. *Burlington Indus., v. Ellerth*,
     524 U.S. 742 (1998); *Brooks v. City of San Mateo*, 214 F.3d 1082 (9th Cir. 2000); *Nidds v.*
26   *Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996).  The *Coszalter* court discusses the
     various standards used in recent cases under Title VII, the False Claims and Major Fraud Acts,
27   and the First Amendment.  *Coszalter*, 320 F.3d at 976.  The "reasonably likely to deter" test is the
     proper test for First Amendment employer retaliation cases.  *Id.*
28

1    The Court finds that the foregoing allegations, taken together and read in the light most

2    favorable to Plaintiff, sufficiently establish the element of adverse action. This is to say that such

3    actions could reasonably likely deter Plaintiff or any other public employee "from engaging in

4    constitutionally protected speech." *Coszalter*, 320 F.3d at 976; *see also Thomas v. Carpenter*,

5    881 F.2d 828, 829 (9th Cir. 1989) (allegation sufficient to form First Amendment claim when

6    plaintiff alleged he had been banned from attending meetings and participating as an evaluator in

7    training exercises in retaliation for political activity); *Allen v. Scribner,* 812 F.2d 426, 428 (9th

8    Cir. 1987) (allegation sufficient to form the basis of a First Amendment claim when plaintiff was

9    reassigned to another position and otherwise harassed for remarks he made to the press).

10   Accordingly, Plaintiff need not amend the allegations related to this element of her claim. [3]

11                          **ii.      Substantial or Motivating Factor**

12   Defendants argue that Plaintiff has not sufficiently pled that her expressive speech was a

13   substantial motivating factor for Defendants' alleged retaliatory actions. To sufficiently plead this

14   element, Plaintiff must first allege that Defendants were aware of her protected speech. Upon an

15   allegation of Defendant's awareness, Plaintiff must also plead at least one of the following to

16   sufficiently allege that the protected speech substantially motivated Defendants to undertake the

17   adverse actions: (i) proximity in time between her expressive conduct and the allegedly retaliatory

18   actions; (ii) that the defendants expressed opposition to her protected speech, either to her or

19   others; or (iii) that Defendants' proffered explanations for their adverse actions were false and

20   pretextual. *Alpha Energy Savers*, 381 F.3d at 929 (citing *Coszalter*, 320 F.3d at 977 and *Keyser v.*

21   *Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001)); *see also Chaffee v.*

22   *Chiu*, 2012 U.S. Dist. LEXIS 46534, at *22-23 (N.D. Cal. Apr. 2, 2012). In assessing whether a

23   plaintiff has made an adequate claim of retaliatory motive, a district court is justified in deciding

24   the question based on the "totality of the facts." *Coszalter*, 320 F.3d at 978.

25

26   [3] Defendants further assert that Plaintiff did not make sufficient allegations about
     Defendant Peterson and Defendant Mulligan individually. Motion at 9. Plaintiff suggests that her
27   inference may not have been clear that all defendants were agents of the other and requests leave
     to amend to allege that all defendants were acting in concert with one another in the activities of
28   which Plaintiff complains. Opp. at 7. Plaintiff shall amend on this point if she files an amended
     complaint.

13

Case 3:12-cv-05743-JCS   Document 25   Filed 03/01/13   Page 14 of 23



United States District Court
Northern District of California

1    Plaintiff must first allege that Defendants were aware of her instances of protected speech.  *Alpha*

2    *Energy Savers*, 381 F.3d at 929.  Plaintiff has alleged that Defendants were aware of her initial

3    refusal to comply with Defendants' request to perform an alleged illegal act, and her initial

4    inquiry to Cal EMA.  However, Plaintiff does not allege that Defendant Mulligan—or any

5    Defendant for that matter—was informed that Plaintiff reported Defendant Mulligan's attempt to

6    retrieve the Underserved Victims Grant checkbook from Plaintiff's locked office to write a $900

7    check for an unauthorized purpose, despite the fact Plaintiff alleges Cal EMA is "currently

8    investigating" this matter.  *See* Compl. ¶¶ 18-19.  Similarly, although Cal EMA allegedly made

9    the District Attorney's office return $172,000 for unlawful transfers out of the Emergency

10   Revolving Fund, Plaintiff never alleges that Defendants were ever informed that it was Plaintiff

11   who triggered this investigation.  *See id.* ¶¶ 28-29.  As to each protected activity listed in the First

12   Amendment claim in the amended complaint, Plaintiff shall allege whether each Defendant was

13   aware of the conduct and that the speech substantially motivated the allege retaliatory actions as

14   described above.

15                          *              *              *

16         Plaintiff's claim is dismissed, though with leave to amend.  If Plaintiff is able to cure this

17   deficiency in an amended complaint, Plaintiff must also plead the following to sufficiently allege

18   that Defendants were substantially motivated by Plaintiff's speech to undertake the adverse

19   actions: (i) proximity in time between her expressive conduct and the allegedly retaliatory actions;

20   (ii) that the defendants expressed opposition to her protected speech, either to her or others; or

21   (iii)  that defendants' proffered explanations for their adverse actions were false and pretextual.

22   *Alpha Energy Savers*, 381 F.3d at 929.  Plaintiff's claim of retaliatory motive will be assessed "in

23   the light of the timing and the surrounding circumstances."  *Coszalter*, 320 F.3d at 978.[4]

24

25

26         ――――――――――――
          [4]  Defendants' argument regarding Plaintiff's noncompliance with the California Tort
27   Claims Act is inapplicable to Plaintiff's First Amendment retaliation claim.  *Stone v. San*
     *Francisco*, 735 F. Supp. 340, 345, 4814 (N.D. Cal. 1990) ("a claimant need not comply with
28   California tort claim requirements prior to filing a section 1983 action.").

United States District Court
Northern District of California

**B.     State Law Claims**

       **1.     Compliance with the California Tort Claims Act**

Defendants argue that Plaintiff's entire Complaint should be dismissed because Plaintiff did not first comply with the California Tort Claims Act ("CTCA"), which provides that no civil suit may be brought against a public entity "until a written claim therfor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board…" Cal Gov't Code § 945.4; Motion 5-6.  The "board" is the governing body of a local public entity, including a county.  Cal. Gov't Code §§ 900.2, 900.4.  The board must grant or deny a claim within forty-five days after it is presented or the claim is deemed rejected.  Cal. Gov't Code § 912.4.  The "requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court." *Butler v. Los Angeles Cnty.*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).  Although certain suits are exempt from the CTCA (i.e. claims for workers' compensation, public benefits, public pensions), the CTCA does not identify whistleblower or intentional infliction of emotional distress claims in its list of exempt claims.  *See* Cal. Gov't Code § 905.  Accordingly, both Plaintiff's state law claims are subject to her compliance with the CTCA.

Plaintiff alleges that she filed a state claim pursuant to California Government Code §§ 910 *et seq.* Compl. ¶ 3; Opposition at 3.  Defendants maintain, however, that even though Plaintiff alleges to have submitted a written claim under the CTCA, she has not pled that her claim has been acted upon or rejected and that her claims should therefore be dismissed.  Reply at 2-3.  Under § 945.6, if the board delivers written notice of its decision to the complainant, the complainant has six months to file a civil suit, or, if the board does not provide written notice, the complainant has two years from the accrual of the cause of action to file suit.  Cal. Gov't Code § 945.6.  This functions as a statute of limitations.  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (Cal. 2007).  Plaintiff did not plead any facts related to whether and when the board delivered written notice of its decision.  If Plaintiff chooses to amend her Complaint, she must allege this additional fact.

### 2.     California Labor Code § 1102.5

California Labor Code § 1102.5 is a "whistleblower" statute that protects an employee who discloses illegal conduct by prohibiting an employer from retaliating against an employee for such action.  Defendants argue this claim must be dismissed for two independent reasons.  First, Defendants argue that Plaintiff failed to exhaust her administrative remedies.  Second, Defendants argue that Plaintiff failed to plead the essential elements of a claim arising under § 1102.5.

#### i.     Exhaustion

California Labor Code § 98.7 addresses the complaint process for an employee who alleges she has been the subject of a California Labor Code violation, including the whistleblower statute:  "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner *may* file a complaint with the division within six months after the occurrence of the violation."  Cal. Lab. Code § 98.7(a) (emphasis added).  The redress statute also provides that "The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other law."  Cal. Lab. Code § 98.7(f).

Defendants argue that Plaintiff's claim under California Labor Code § 1102.5 should be dismissed because Plaintiff did not plead that she brought a complaint before the Labor Commissioner, and therefore did not exhaust administrative remedies pursuant to California Labor Code § 98.7.  Defendants cite *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159 (E.D. Cal. 2005), where the court dismissed a claim despite California Labor Code § 98.7's use of the permissive word "may."  *See id.* at 1180.  The plaintiff in *Neveau* was a police officer who claimed he was retaliated against for reporting sexual harassment, racial discrimination, and cheating on police department exam.  *Neveau*, 392 F. Supp. 2d at 1166.  The *Neveau* court relied on the California Supreme Court holding in *Campbell v. Regents of the University of California* that the plaintiff "should have exhausted the university's administrative remedies before proceeding to suit."  35 Cal. 4th 311, 333 (Cal. 2005).  The *Neveau* court inferred from *Campbell* that the plaintiff was required to exhaust available administrative remedies before the Labor Commissioner prior to filing suit.  *Neveau*, 392 F. Supp. 2d at 1180.  Because the plaintiff failed

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to allege that he exhausted administrative remedies with the Labor Commissioner, the court

2   granted the defendant's motion to dismiss.  *Id.*

3       Plaintiff argues that she was not required to bring a claim before the Labor Commissioner

4   and cites California case law holding that the exhaustion contemplated by California Labor Code

5   § 98.7 is permissive rather than mandatory.[5]  *See Lloyd v. County of Los Angeles*, 172 Cal. App.

6   4th 320, 331-32 (2009).  The plaintiff in *Lloyd* alleged retaliation for whistleblowing activity

7   related to asbestos removal.  *Id.* at 324.  The court considered the language of California Labor

8   Code § 98.7(f) which states "the rights and remedies under this section do not preclude an

9   employee from pursuing any other rights and remedies under any other law," and that an

10  aggrieved employee "may file" a complaint with the Labor Commissioner.  *Id.* at 331.  The court

11  concluded that § 98.7 "merely provides the employee with an additional remedy, which the

12  employee may choose to pursue."  *Id.*  The court acknowledged the defendant's reliance on

13  *Campbell*, but discussed it only in the context of the plaintiff pursuing "internal administrative

14  remedies pursuant to the County's civil service rules," not in the context of administrative

15  remedies before the Labor Commissioner pursuant to California Labor Code § 98.7.  *Id.* at 326-

16  27; *Campbell*, 35 Cal. 4th at 311.

17      A court from this district has followed the reasoning of *Lloyd*, and held that a plaintiff

18  need not exhaust administrative remedies before the Labor Commissioner because the language

19  of § 98.7 is permissive, not mandatory.  *See Turner v. City & County of San Francisco*, No. 11-

20  1427, 2012 U.S. Dist. LEXIS 123161, at *22-23 (N.D. Cal. Aug. 29, 2012).  The *Turner* court

21  explained that, "[w]hile a number of federal district courts have extended *Campbell* to require

22  exhaustion under § 98.7, this Court is unaware of any California state court decision that has so

23  held."  *Turner*, 2012 U.S. Dist. LEXIS 123161, at *22-23.  The court cited a post-*Campbell*

24  federal district court opinion that distinguished *Campbell*'s application to claims in front of the

25  Labor Commissioner: "By its terms, *Campbell* only held that exhaustion of *internal*

26  administrative remedies is required; there is no discussion in *Campbell* of exhaustion of

27  ────────────────

28  [5] Plaintiff also asserts in her Opposition that she presented a claim to the Labor
   Commissioner, though she did not so allege in the Complaint, and asks for leave to amend.  Opp.
   at 8.

1    administrative remedies before the Labor Commission." *Creighton v. City of Livingston*, No. 08-

2    1507, 2009 U.S. Dist. LEXIS 93720, at *31 (E.D. Cal. Oct. 7, 2009).  At least one other district

3    court agrees with *Turner* and *Creighton* in concluding that "there are no California decisions

4    requiring exhaustion of a section 1102.5 claim under section 98.7.  *Campbell* involved exhaustion

5    of *internal* administrative procedures, as the opening paragraph of that decision makes clear, and

6    makes no mention of section 98.7."  *Mango v. City of Maywood*, No. 11-5641, 2012 U.S. Dist.

7    LEXIS 150929, at *41 (C.D. Cal. Oct. 5, 2012) (italics in original).  The Court finds this

8    reasoning persuasive.  Accordingly, Plaintiff was not required to exhaust administrative remedies

9    before the Labor Commissioner before filing her claim under Californian Labor Code § 1102.5

10   and this Court will consider the sufficiency of Plaintiff's allegations.

11                     **ii.     Sufficiency of Plaintiff's Whistleblower Claim**

12           Defendants argue that, even if Plaintiff has pled facts sufficient to establish exhaustion of

13   administrative remedies, Plaintiff failed to state a claim under California Labor Code § 1102.5.

14   Section 1102.5 prohibits an employer from retaliating against an employee who discloses

15   information to a government or law enforcement agency, "where the employee has reasonable

16   cause to believe that the information discloses a violation of state or federal statute, or a violation

17   or noncompliance with a state or federal rule or regulation."  Cal. Lab. Code § 1102.5(a).  To

18   establish a prima facie case under § 1102.5, "a plaintiff must show (1) she engaged in a protected

19   activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal

20   link between the two."  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378,

21   1384 ( 2005).  For the same deficiencies mentioned with regard to Plaintiff's First Amendment

22   retaliation claim, the Court finds that Plaintiff has not sufficiently alleged a factual basis to

23   support her whistleblower claim.

24                     **a.     Protected Activity**

25           A plaintiff engages in protected activity under § 1102.5 "where the employee has

26   *reasonable cause to believe* that the information discloses a violation of *state or federal statute*, or

27   a violation or noncompliance with a *state or federal* rule or regulation."  Cal. Lab. Code §

28   1102.5(a).  Defendants assert that Plaintiff's whistleblower claim fails because Plaintiff never

United States District Court
Northern District of California

18

alleges that she disclosed information about Defendants' violation of a state or federal law, and that even if Defendants' activities violated local county laws or protocols, local violations are not state or federal violations. Motion at 13. Defendants rely on *Edgerly v. City of Oakland* in asserting that "municipal statutes do not qualify as state statutes within the scope of §1102.5(c) unless there is some enabling provision, for example, a municipal statute or rule stating that the intent of the city is to have its local laws treated as statewide statutes for purposes of this section." 211 Cal. App. 4th at 1201. Defendants argue that Plaintiff's allegations are, thus, insufficient to proceed as a matter of law. Motion at 13.

Plaintiff does not respond to this argument in her Opposition. Nevertheless, the Court finds *Edgerly* distinguishable from the case at bar. The plaintiff in *Edgerly* only alleged that her government employer violated local ordinances. *Edgerly*, 211 Cal. App. 4th at 1199-1200. There was no allegation that the plaintiff disclosed information for which the plaintiff had reasonable cause to believe was a violation of a state or federal statute. *Id.*

Here, Plaintiff alleges that Defendants' conduct "constituted preventative and punitive measures aimed at Plaintiff's lawful exercise of disclosing information to government agencies that Plaintiff had a *reasonable cause to believe were violations of state statutes*." Compl. ¶ 39 (emphasis added). Specifically, Plaintiff alleges that:

(1) she informed Defendants Peterson and Mulligan that their proposed timesheet alteration was likely illegal, and after inquiring with Cal EMA at Defendants' directive, she informed Defendant Peterson that the alteration was in fact illegal and she would not participate (Compl. ¶¶ 11-12);

(2) she reported to Cal EMA that Defendant Mulligan sought to write a $900 check for an unauthorized purpose from the Underserved Victims Grant checkbook, which Cal EMA is investigating (*Id.* ¶¶ 18-19); and

(3) she reported suspected misappropriation of Emergency Revolving Fund monies to the California Victim Compensation Board, which resulted in a finding that Defendant Mulligan violated protocol and required repayment of $172,000 (*Id.* ¶¶ 28-29).

Plaintiff does not allege that the timesheet alteration plan that was the subject of her first communication was in fact carried out by Defendants. Without this allegation, Plaintiff could not have had a reasonable belief that she disclosed an actual violation of state or federal statute, or a

United States District Court
Northern District of California

1    violation or noncompliance with a state or federal rule or regulation.  Cal. Lab. Code § 1102.5(a).

2    Accordingly, Plaintiff's first instance was not protected speech under § 1102.5.

3        However, the Court finds that the nature of Plaintiff's reports to two state agencies—Cal

4    EMA and the California Victim Compensation Board—that Defendants allegedly misused funds

5    from a state agency gave Plaintiff *reasonable cause to believe* that she was reporting Defendants'

6    violation of a state or federal statute.  Thus, even if Plaintiff did not allege the exact state law she

7    believe Defendants violated, the language of the statute−requiring that Plaintiff disclose what she

8    has *reasonable cause to believe* is a violation of a state or federal statute−shows that Plaintiff's

9    allegations suffice in this regard.  Accordingly, Plaintiff has sufficiently pled facts to establish the

10   first element of her prima facie whistleblower claim for her: (1) report to Cal EMA regarding the

11   $900 check, and (2) report to the California Victim Compensation Board.

**b.    Adverse Employment Action**

13       The element of adverse action is judged by a different standard under § 1102.5 than under

14   the First Amendment analysis above.  While the inquiry in the First Amendment context focuses

15   on whether the adverse action was reasonably likely to deter protected speech, the inquiry here is

16   whether the "adverse employment action is one that materially affects the terms, conditions, or

17   privileges of employment."  *Beagle v. Rite Aid Corp.*, No. 08-1517, 2009 U.S. Dist. LEXIS

18   87073, at *16-17 (N.D. Cal. Sept. 23, 2009) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th

19   1028, 1036, 1050-52 (2005) (applying "materiality" test  and rejecting "deterrence" test) and

20   *Patten*, 134 Cal. App. 4th at 1387-88 (applying *Yanowitz* "materiality" test to § 1102.5 claim)).

21   The materiality test looks to the "entire spectrum of employment actions that are reasonably likely

22   to adversely and materially affect an employee's job performance or opportunity for advancement

23   in his or her career."  *Yanowitz*, 36 Cal. 4th at 1054.  A plaintiff's allegations are to be considered

24   "collectively under a totality of the circumstances approach."  *Id.* at 1036.

25       Plaintiff has identified multiple actions by Defendants that "taken in combination … are

26   acts that threatened to undermine Plaintiff's ability to work productively in the office, and

27   ultimately destroyed her past work efforts on behalf of the victims she serves."  Opp. at 7.

28   Plaintiff alleges that: (1) she was denied meetings with her direct supervisor, Defendant

United States District Court
Northern District of California

20

United States District Court
Northern District of California

Mulligan, following the Plaintiff's and Defendants' disagreement about the legality of

Defendant Peterson's timesheet correction plan (Compl. ¶ 15); (2) Defendant Mulligan deprived

Plaintiff of the opportunity to maintain a temporary staff position on a grant Plaintiff manages

(*Id.* ¶ 17); (3) she was excluded from a study of the office's strengths and weaknesses despite

being part of the management team and being told that all of the management team would be

included (*Id.* ¶ 21); (4) Defendant Mulligan responded to Plaintiff's email about mold and

personnel issues with an "accusatory investigation" that included a directive for Plaintiff to

document her response to a sexual harassment incident that had occurred five years earlier (*Id.*

¶ 25-26); and, (5) Defendants withdrew monies from a fund for which Plaintiff had the duty of

accounting and deposited the funds in an account managed by Defendant Mulligan before

spending the funds on items Plaintiff believed to be outside of the contractually-authorized

expenditures, which caused the District Attorney's Office to either repay or forego

$172,000.00 in grant funds that Plaintiff would have secured for county residents (*Id.* ¶ 28-

29). Opp. at 5-7. These allegations, taken together with Plaintiff's other allegations, are

sufficient to plead adverse action. *See also Faurie v. Berkeley Unified Sch. Dist.*, No. 08-0060-

THE, 2008 U.S. Dist. LEXIS 108246, at *23-24 (N.D. Cal. Mar. 25, 2008) ("Plaintiff's

[complaint] alleges a continuing course of harassment, hostility, and retaliation, and has certainly

alleged intolerable working conditions in a manner sufficient to survive a motion to dismiss.");

*Pezoa v. County of Santa Clara*, No. 05-03717-JF, 2006 U.S. Dist. LEXIS 58027, at *23-25 (N.D.

Cal. Aug. 8, 2006) (allegations are sufficient for a claim of retaliation under § 1102.5 where

plaintiff alleged threatened reprimand by supervisor, implied threat of dismissal, remarks by

management that plaintiff had a "borderline personality disorder" in response to her complaints).

Plaintiff has therefore pled sufficient facts to satisfy the element of adverse action under § 1102.5.

### c.      Causal Link

Finally, Plaintiff must plead a causal link between her disclosure of what she had

reasonable cause to believe constituted Defendants' illegal conduct, and Defendants' adverse

actions. *Patten*, 134 Cal. App. 4th at 1384. Causation may be inferred from circumstantial

evidence, including "the employer's knowledge that the [employee] engaged in protected

1  activities and the proximity in time between the protected action and allegedly retaliatory

2  employment decision." *Morgan v. Regents of Univ. of California*, 88 Cal. App. 4th 52, 69-70

3  (Cal. App. 1st Dist. 2001) (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)).  The

4  employer's awareness is an essential component of the causal link.  *Morgan*, 88 Cal. App. 4th at

5  70.

6       As discussed above in the First Amendment analysis of retaliatory motive, Plaintiff does

7  not sufficiently allege that Defendants were aware of either instance of her protected conduct that

8  survived the first prong of the § 1102.5 analysis: (1) reporting to Cal EMA regarding the $900

9  check, and (2) reporting to the California Vicitm's Compensation Board.  Without an allegation

10 that Defendants were aware that Plaintiff engaged in protected activity, there can be no basis to

11 find a causal link between the protected activity and adverse action.  For this reason, Plaintiff's

12 whistleblower claim is DISMISSED WITH LEAVE TO AMEND.

13      **3.     Intentional Infliction of Emotional Distress**

14      To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must

15 allege four elements: (1) outrageous conduct by the defendant, (2) intention to cause or reckless

16 disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4)

17 actual and proximate causation of the emotional distress.  *Cole*, 43 Cal. 3d at 170.  Here, Plaintiff

18 alleges that Defendants sought to "undermine the effectiveness of the employee responsible for

19 procuring state monies for indigent members of the community, based upon the grant custodian's

20 refusal to violate the law."  Opp. at 9-10.  Plaintiff insists that Defendants' actions are "atrocious,

21 utterly intolerable, and go beyond all possible bounds of decency."  *Id.*

22      The Court does not disregard Plaintiff's allegations that Defendants acted improperly.

23 Nevertheless, the nature of Plaintiff's allegations are insufficient as a matter of law to state claim

24 for IIED.  "Conduct, to be 'outrageous,' must be so extreme as to exceed all bounds of that

25 usually tolerated in a civilized society."  *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir.

26 1991) (holding that a supervisor screaming and yelling while criticizing an employee's

27 performance and threatening to throw the employee out of the department, accompanied by

28 threatening gestures, is not sufficient to establish an IIED claim).  Even assuming Plaintiff's

allegations of Defendant's retaliatory conduct to be true, the Court simply cannot find that the actions alleged could possibly constitute extreme and outrageous conduct.  Nor has Plaintiff alleged that Defendants intended to cause her severe emotional distress.  Although Plaintiff may have alleged facts to meet the third and fourth elements of this claim, this is insufficient. Accordingly, Plaintiff's fifth cause of action for IIED is DISMISSED WITH PREJUDICE.  *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend where the amendment would be futile.").

## V.        CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED.  Should Plaintiff choose to file an amended complaint, Plaintiff must do so within thirty (30) days of the date of this order.  If Plaintiff does not file an amended complaint, the clerk is directed to close the file.

IT IS SO ORDERED.

Dated: March 1, 2013

_____
Joseph C. Spero
United States Magistrate Judge

United States District Court

23