UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN DOWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>    Defendants. | Case No. 12-cv-05743-JCS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Dkt. No. 64** |

## I.   INTRODUCTION

In this case, Plaintiff Eileen Dowell (hereafter "Plaintiff") filed a complaint against her employer, the County of Contra Costa, and her two supervisors, Contra Costa County District Attorney Mark Peterson and Chief Inspector Paul Mulligan (hereafter, "Defendants"), alleging retaliation in violation of the First Amendment and state law. Defendants filed a Motion for Summary Judgment (hereafter, "Motion"), for which the Court held a hearing on February 7, 2014 at 9:30 a.m. Since Plaintiff filed her complaint, a number of claims and issues have been dismissed and/or conceded by Plaintiff in her opposition brief to Defendants' Motion. The sole remaining claim is for First Amendment retaliation, and that claim requires a finding that Plaintiff spoke as a private citizen as opposed to a public employee. For the reasons stated below, the Court holds that no reasonable jury could find that Plaintiff spoke as a private citizen. Accordingly, Defendants' Motion for Summary Judgment is GRANTED.[1]

//

//

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

The following facts are undisputed. *See* Joint Statement of Undisputed Material Facts Regarding Defendants' Motion for Summary Judgment ("JSUF"). The County of Contra Costa has employed Plaintiff as the Victim Witness Program Manager since 2004. JSUF ¶ 2. Plaintiff has been on a leave of absence since February 16, 2012. *Id*.

As Program Manager of the Victim Witness Program, Plaintiff manages two grants provided by the California Emergency Management Agency ("Cal EMA"). JSUF ¶ 1. The two grants are called the Victim Witness Assistance Program Grant (the "VW Grant") and the Underserved Victim Advocacy and Outreach Program Grant (the "UV Grant"). *Id*. Plaintiff is responsible for overseeing a staff of approximately seven employees, monitoring and ensuring compliance with the grants, communicating with Cal EMA for clarification about what is permissible, and handling questions about policies or procedures that apply to the grants. *Id*. ¶ 4

In January 2011, Mark Peterson took office as the newly elected District Attorney for Contra Costa County. JSUF ¶ 5. On or about June 1, 2011, Mr. Peterson appointed Paul Mulligan to the Chief of Inspectors position, and Mr. Mulligan became Ms. Dowell's direct supervisor. *Id*. ¶ 6. Mr. Peterson is Mr. Mulligan's supervisor. Id. ¶ 7.

In early June 2011, Plaintiff participated in a meeting with Mr. Peterson and Mr. Mulligan about the Victim Witness Program. JSUF ¶ 8. One of the items discussed at the meeting was which grant to charge staff employee Crystal Carey's time. *Id*. ¶ 9. Ms. Carey had been splitting her time between the VW Grant and the UV Grant, only the latter of which requires a matching monetary contribution from the District Attorney's Office. *Id*. ¶ 10. At the meeting, a question arose as to whether more of Ms. Carey's time could be charged to the non-matching grant (as a way to conserve resources). *Id*. ¶ 11. Mr. Peterson asked Plaintiff to contact Cal EMA and see whether it would be permissible to charge more of Ms. Carey's time to the non-matching grant and asked Ms. Dowell if she had a problem with that, to which she replied that she would contact Cal EMA and let him know. *Id*. ¶ 12; *see also* Declaration of Lisa Horgan ("Horgan Decl."), Ex. 1 (Deposition of Eileen Dowell, Part I) ("Dowell Depo. I") at 64:22-23.

After contacting Sally Hencken, who worked at Cal EMA, Plaintiff sent Mr. Peterson an

email in which she wrote the following:

> I spoke to our Program Specialist at Cal EMA this morning and have been told that if I change Crystal's timesheets to charge the VW grant and not the UV grant it is illegal and we could face sanctions. I do not have supporting documentation to justify charging Crystal full time to the VW grant. Therefore I will not be having Crystal change her timesheets nor will I be signing off on them.

JSUF ¶ 13.

After receiving this email from Plaintiff, Mr. Peterson convened a follow-up meeting with Plaintiff and Mr. Mulligan. JSUF ¶ 14. Mr. Peterson began the meeting by telling Ms. Dowell that he was unhappy with her sending an email like that. *Id*. Mr. Peterson was concerned that the email implied (inaccurately) that Plaintiff had been asked to change a timesheet. *Id*. ¶ 15. The reason Mr. Peterson asked Plaintiff to contact Cal EMA was to obtain their permission before making any change to Ms. Carey's timesheets. *Id*. ¶ 16. Mr. Peterson wanted to make sure that Plaintiff understood that he wanted Cal EMA's permission before making any change to Ms. Carey's timesheets. *Id*. ¶ 17.

Plaintiff's deposition testimony confirms what occurred at this follow-up meeting. Plaintiff testified that Mr. Peterson "felt [that her] e-mail reflected that somebody was trying to make me do it." Dowell Depo. I at 70:5-6. Nevertheless, Plaintiff did not believe Mr. Peterson had wanted to do anything illegal:

> Q: You're not saying that Mr. Peterson wanted to do anything illegal, are you?
> A: No, I didn't − I did not believe that he wanted to do anything illegal. That's why I brought it to his attention, and I think he misunderstood my intent.

Horgan Decl., Ex. 2 (Deposition of Eileen Dowell) ("Dowell Depo. II") at 138:11-15. Plaintiff said that after reading her email, Mr. Peterson "was very upset about my tone. He said he didn't like the tone or what I was implying in my email." *Id*. at 137:15-17.

At the follow-up meeting, Mr. Peterson asked Mr. Mulligan to also contact Cal EMA. JSUF ¶ 18. On June 7, 2011, Mr. Mulligan sent a letter via email to Cal EMA. *Id*. ¶ 19. Mr. Mulligan's letter stated that the District Attorney's Office only sought to make a change with Cal EMA's permission. *Id*. ¶ 20. Mr. Mulligan copied Plaintiff on his letter, and Plaintiff replied that

3

1    he did "an excellent job" and that she appreciated him establishing a relationship with Cal EMA.

2    *Id*. ¶ 21.

3    After Cal EMA told Mr. Mulligan that it would not be permissible to make the proposed

4    change, no one asked Plaintiff to change the timesheets and Plaintiff had no further involvement.

5    JSUF ¶ 22. Plaintiff was never directed to change Ms. Carey's timesheets. *Id*. ¶ 23.

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 255 (1986).

## IV.   DISCUSSION

The majority of claims in this case have been voluntarily dismissed by Plaintiff.[2] All that remains is Plaintiff's claim under 42 U.S.C. § 1983 for First Amendment retaliation. Furthermore, in response to Defendants' Motion, Plaintiff only claims that one instance of her speech constitutes protected speech under the First Amendment: her email to Mr. Peterson regarding the timesheets.[3] Accordingly, the only remaining questions in this case are whether Plaintiff's email

---

[2] In response to Defendants' motions to dismiss, Plaintiff did not oppose dismissal of her claims for negligence and negligent infliction of emotional distress, and those claims were dismissed with prejudice. *See* Dkt. Nos. 25, 40 (Orders on Motions to Dismiss). In response to Defendants' Motion for Summary Judgment, Plaintiff does not oppose dismissal of her claims arising under California Labor Code § 1102.5 (b) and (c). Accordingly, Defendants are entitled to summary judgment on Plaintiff's second and third causes of action arising under California Labor Code § 1102.5 (b) and (c).

[3] In her opposition to Defendants' Motion, Plaintiff states that she no longer contends that her speech relating to a $900 check from one of the accounts relating to the grants is protected by the First Amendment. Dkt. No. 69 at 12:20-23. In the Court's Order Granting in Part and

4

is protected speech, and if so, whether it triggered Defendants to retaliate against Plaintiff in violation of her First Amendment rights.

### A. Law Regarding Speech as Private Citizen or Public Employee

Claims for First Amendment retaliation have five elements:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). In *Dahlia v. Rodriguez*, the Ninth Circuit, sitting *en banc*, clarified that these elements need not be answered in any particular order, but "failure to meet any one of them is fatal to the plaintiff's case." 735 F.3d 1060, 1067 n. 4 (9th Cir. 2013) ("precisely because all five factors are independently necessary, it may be more efficient in some instances to answer a potentially dispositive question further down the *Eng* list first.").

The second question of *Eng*'s five-part inquiry derives from the Supreme Court's decision in *Garcetti v. Ceballos*, where the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). In *Garcetti*, the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties" because the parties agreed that the plaintiff had at all times spoken pursuant to his official duties. Nevertheless, the Court rejected the idea that a formal job description would resolve this issue, and held that "[t]he proper inquiry is a practical one." *Id*. at 424.

In *Dahlia*, the Ninth Circuit, while disclaiming any intent to propose an exhaustive list of factors or name any one factor that is dispositive to this issue, provided "a few guiding principles"

---

Denying in Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, the Court dismissed Plaintiff's allegations relating to a third instance of speech because Plaintiff had not alleged that Defendants were aware of that speech, and Plaintiff had failed to amend her complaint on that point as directed in a previous order. Dkt. No. 40 at 6:2-8.

to determine whether an employee speaks pursuant to his or her official job duties. *Dahlia*, 735 F.3d at 1074. First, the court wrote that "whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties." *Id*. For instance, in *Freitag v. Ayers*, the Ninth Circuit held that a correctional officer "acted pursuant to her professional duties when she made 'internal reports of inmate sexual misconduct and documentation of the prison's failure to respond,'" but acted as a private citizen "when she complained about the same circumstance in a letter to a state senator and to the state inspector general." *Id*. at 1073 (citing *Freitag v. Ayers*, 468 F.3d 528, 545-46 (9th Cir. 2006)).

The second guiding principle is "the subject matter of the communication," which is "of course highly relevant to the ultimate determination whether the speech is protected by the First Amendment." *Dahlia*, 735 F.3d at 1074-75. "When an employee prepares a routine report, pursuant to normal departmental procedure, about a particular incident or occurrence, the employee's preparation of that report is typically within his job duties." *Id*. at 1075. "By contrast, if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee…." *Id*.

As a final point, the court held that "when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties." *Id*. For instance, in *Dahlia*, a police officer alleged that he defied his supervisor's orders when he reported police misconduct by his coworkers to the FBI. While acknowledging a circuit split on this point, the Ninth Circuit believed that such conduct is likely private speech "notwithstanding suggestions to the contrary in the employee's job description" which would require such reporting. *Id*. The court noted that "[a]s part of a 'practical' inquiry" in determining whether there was actual defiance, "a trier of fact must consider what [the plaintiff] was actually told to do." *Id*.

### B. Plaintiff Spoke as a Public Employee

Applying the foregoing principles to the facts of this case, it is clear that no reasonable jury could find that Plaintiff's email to Defendant Peterson regarding the timesheets was written as a

private citizen. First, it is undisputed that Plaintiff "confined [her] communications to [her] chain of command" because she wrote the email regarding Ms. Carey's timesheets to Defendant Peterson. The email was not sent to anyone but Defendant Peterson, and no one outside of the District Attorney's Office was made aware of Plaintiff's speech. Plaintiff's speech is therefore similar to the "internal reports of inmate sexual misconduct" in *Freitag* that was considered speech made pursuant to official job duties. *Freitag*, 468 F.3d at 545-46. While this factor is not dispositive, it is relevant, and weighs on the side of unprotected speech.

The subject matter of Plaintiff's email was typical of Plaintiff's job duties. Plaintiff manages two grants provided by Cal EMA. Plaintiff stipulated to the fact that her job duties include "monitoring and ensuring compliance with the grants, communicating with Cal EMA for clarification about what is permissible, and handling questions about policies or procedures that apply to the grants." JSUF ¶ 3. Plaintiff's email to Defendant Peterson was in direct response to a specific question posed by him regarding the legal use of funds from the grants. Plaintiff was not, in this email, raising "broad concerns about corruption or systemic abuse…." *Id*. at 1075. Rather, she was simply doing her job.

Plaintiff argues that the last sentence of her email, in which she wrote that she "will not be having Crystal change her timesheets" and will not "be signing off on them" was outside of her job duties. Plaintiff contends that because Defendants never expressly asked Plaintiff, in the event the proposed change was illegal, whether she would nonetheless make the change, this speech was not within her job duties. The Court disagrees. The scope of Plaintiffs' job duties is broader than what her supervisors expressly ask her to do. In other words, the fact that Plaintiff provided more information than specifically requested of her does not render the extra information provided outside the scope of her job. Plaintiff stipulated that her job duties include "handling questions about policies or procedures that apply to grants." JSUF ¶ 3. In writing that the proposed change was illegal and that she would not go forward with this change, Plaintiff was "handling questions about policies or procedures that apply to grants." *Id*. No reasonable jury could find otherwise.

The last guiding principle from *Dahlia* further supports this conclusion. To consider whether a plaintiff actually speaks in defiance of a supervisor's direct order, "a trier of fact must

1   consider what [the plaintiff] was actually told to do." *Id*. The undisputed facts in this case show
2   that Plaintiff was never directed to change Ms. Carey's timesheets. JSUF ¶ 23. Rather, Mr.
3   Peterson simply asked Plaintiff to contact Cal EMA and see whether it would be permissible to
4   charge more of Ms. Carey's time to the non-matching grant, to which she replied that she would
5   contact Cal EMA and let him know. JSUF ¶ 12. Plaintiff understood this. In her own words,
6   Plaintiff testified that she "did not believe that [Defendant Peterson] wanted to do anything
7   illegal." Dowell Depo. II at 138:13-15.
8         Despite Plaintiff's understanding that Mr. Peterson had not asked her to do anything
9   illegal, Plaintiff wrote in the email to Defendant Peterson that she would not be having Ms. Carey
10  change her time sheets, and would not be signing off on them because of the illegality. JSUF ¶ 13.
11  Plaintiff's email could be read to suggest that Plaintiff had a different understanding of Defendant
12  Peterson's intent, but that is beside the point. For purposes of the instant inquiry, all that matters
13  is that Plaintiff was never asked to do anything illegal. Because she was not asked to do anything
14  illegal, Plaintiff's response that she would not do anything illegal was not in defiance to anything
15  Defendant Peterson said. Because Plaintiff was not speaking "in direct contravention to [her]
16  superior's orders," *Dahlia*, 735 F.3d at 1075, there is indication that Plaintiff's email, or any part
17  of it, falls outside of Plaintiff's professional duties.
18        In a twenty-four page opposition brief, Plaintiff devotes one page to explaining why her
19  email falls outside of her official job duties. In this one page, Plaintiff's entire argument rests on
20  one sentence from this Court's order on Defendants' second motion to dismiss. In the order, the
21  Court wrote: "common sense dictates that Plaintiff's remark that she would not participate in
22  illegal activity was not within Plaintiff's job duties − employees are generally not paid to inform a
23  superior that they will not participate in illegal conduct proposed by that superior." Dkt. No. 40 at
24  4:19-21. In her opposition brief, Plaintiff contends that "this Court's previous holding controls
25  this issue and conclusively resolves it in Plaintiff's favor." Dkt. No. 69 at 13:20-21.
26        Plaintiff's remark demonstrates a misunderstanding of the nature of a motion to dismiss
27  versus the nature of a motion for summary judgment. At the dismissal stage, courts are required to
28  assume that all allegations in the complaint are true. *Parks Sch. of Bus. v. Symington*, 51 F.3d

1480, 1484 (9th Cir. 1990).  This is not the case at summary judgment, where the party opposing summary judgment must point to "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Indeed, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff alleged in the First Amended Complaint that "Defendant Paul Mulligan instructed Plaintiff to charge [Ms. Carey's] hours to the Victim/Witness grant…."  FAC ¶ 11.  Thus, Plaintiff's additional allegation that she "wrote an email to Defendant Mark Peterson informing him that such an action is illegal and that she would not participate in such actions," *id*., suggested that Plaintiff spoke in defiance of Defendant Paul Mulligan's order.  *See Dahlia*, 735 F.3d at 1075 ("when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties.").  Nevertheless, discovery in this case has revealed that Plaintiff's allegation was false.  The undisputed evidence shows that Plaintiff was never instructed to change Ms. Carey's timesheets, and was only instructed to inquire about the legality of such a change.  JSUF ¶¶ 12, 23.

\*       \*       \*

Because Plaintiff did not speak as a private citizen when she wrote her email to Defendant Peterson, Plaintiff's First Amendment retaliation claim must fail.  *Dahlia*, 735 F.3d at 1067 n. 4 ("failure to meet any one of [the *Eng* factors] is fatal to the plaintiff's case.").  Therefore, the Court does not reach the other questions outlined in *Eng*.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.  The Clerk is directed to enter final judgment and close the file in this case.

**IT IS SO ORDERED**.

Dated: February 18, 2014

JOSEPH C. SPERO
United States Magistrate Judge